# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| GLOBAL MERCHANDISING SERVICES, LTD., | ) ) ) |
| Plaintiff, | ) **Civil Action No.** ) |
| v. | ) ) |
| VARIOUS JOHN DOES, JANE DOES and ABC COMPANIES | ) ) ) |
| Defendants. | ) ) ) |

## COMPLAINT FOR TRADEMARK INFRINGEMENT
## AND UNFAIR COMPETITION

1. This Court has exclusive jurisdiction over this action under 28 U.S.C. §§1331 and 1338(a) and 15 U.S.C. §§ 1121, 1125, 1126 and 1116. This action arises under the Lanham Trademark Act (15 U.S.C. Section 1051, et seq.).

2. Plaintiff Global Merchandising Services, Ltd. is a private limited liability company organized under the laws of the United Kingdom with a place of business in Los Angeles, California.

3. Upon information and belief, Defendants Various John Does and Jane Does are residents of or transact and do business in and/or will be present in The Woodlands, Texas on and before August 22, 2021 or are now conspiring to travel and otherwise traveling to the other states listed in Schedule A hereto and are subject to the jurisdiction of this Court. The identities of the Various John Does and Jane Does are not presently known.

4. Upon information and belief, Defendants ABC Companies, through their agents, servants and employees, transact and do business in and/or will be present in The Woodlands,

Texas, on and before August 22, 2021 or are now conspiring to travel and otherwise traveling to other states listed in Schedule A hereto and are subject to the jurisdiction of this Court. The identities of the ABC Companies are not presently known.

## THE PARTIES

5. Since as early as 1983, Megadeth has used the MEGADETH trademark to identify itself in all phases of the entertainment industry and to distinguish itself from other professional musical performers.

6. Since as early as 1994, Lamb of God has used the LAMB OF GOD trademark to identify itself in all phases of the entertainment industry and to distinguish itself from other professional musical performers.

7. Megadeth and Lamb of God have granted Plaintiff the exclusive right to market merchandise, including, but not limited to, clothing, jewelry, photographs and posters bearing the MEGADETH and LAMB IF GOD names, trademarks, logos, and/or likenesses at concert engagements throughout the United States.

8. Defendants are numerous independent unlicensed peddlers and manufacturing and distributing companies who will be attempting to distribute and sell unauthorized bootleg and inferior merchandise embodying the MEGADETH and LAMB OF GOD names, trademarks, logos and/or likenesses (hereinafter referred to collectively as "Bootleg Merchandise") including, but not limited to, t-shirts outside the confines of the Cynthia Woods Mitchell Pavilion, The Woodlands, Texas on August 22, 2021 and at Megadeth/Lamb of God concerts on their present concert tour, a partial itinerary of which is listed on Exhibit A hereto, in violation of Plaintiff's rights under the Lanham Act. The identities of these Defendants are not presently known and cannot be known unless they voluntarily permit themselves to be identified.

## BACKGROUND

9. To date, in excess of 20 Million copies of recordings embodying the performances of Megadeth have been sold. To date, in excess of 2 Million copies of recordings embodying the performances of Lamb of God have been sold.

10. To date, in excess of 2 Million Dollars' worth of licensed merchandise bearing the MEGADETH names, trademarks, logos and/or likenesses has been sold. To date, in excess of 1 Million Dollars' worth of licensed merchandise bearing the LAMB OF GOD names, trademarks, logos and/or likenesses has been sold.

11. Since as early as 1984, Megadeth has used the MEGADETH mark to identify its services as a musical group. Megadeth has sought to distinguish merchandise pertaining to it from merchandise made and sold and pertaining to others by prominently displaying the MEGADETH trademark and/or likenesses on t-shirts and other merchandise associated with MEGADETH.

12. Since as early as 1994, Lamb of God has used the LAMB OF GOD mark to identify its services as a musical group. Lamb of God has sought to distinguish merchandise pertaining to it from merchandise made and sold and pertaining to others by prominently displaying the LAMB OF GOD trademark and/or likenesses on t-shirts and other merchandise associated with Lamb of God.

13. Plaintiff has been granted the exclusive license to sell merchandise bearing the MEGADETH and LAMB OF GOD trademarks, logos and likenesses at Megadeth and Lamb of God concert engagements throughout the United States.

14. Megadeth and Lamb of God are embarking on their concert tour of the United States. Virtually all of those concerts are or will be sold out. The Megadeth/Lamb of God concert itinerary, in part, is annexed hereto as Exhibit A.

15. Based upon experience in selling Megadeth and Lamb of God merchandise, including, but not limited to, t-shirts, at similar concerts and performances throughout the United States, it can be stated with certainty that outside the concerts halls at which Megadeth and Lamb of God are performing, before, during and after their appearances, Defendants have and will attempt to sell imitation and inferior Bootleg Merchandise.

16. The sale of the Bootleg Merchandise by Defendants is and will be without Plaintiff's permission or authority.

17. This unlawful activity results in irreparable harm and injury to Plaintiff in that, among other things, it deprives Plaintiff, Megadeth and Lamb of God of their absolute right to determine the manner in which the Megadeth and Lamb of God images are presented to the general public through merchandising; deceives the public as to the origin and sponsorship of such merchandise; wrongfully trades upon and cashes in on the reputations of Plaintiff, Megadeth and Lamb of God as well as their commercial value and exclusive rights in their trademarks, and it irreparably harms and injures the reputations of Megadeth, Lamb of God and Plaintiff.

## AS AND FOR A FIRST CAUSE OF ACTION
### Violation of 15 U.S.C. §1125(a) (MEGADETH INFRINGEMENT)

18. Plaintiff repeats and realleges paragraphs 1 through 17 of this Complaint as if fully set forth herein.

19. This count arises under Section 43(a) of the Lanham Act relating to trademarks, trade names and unfair competition entitled "False Designation of Origin and False Descriptions Forbidden," 15 U.S.C. §1125(a), and involves false descriptions in commerce.

20. The MEGADETH trademark, likenesses and logos have been used widely throughout the United States. As a result of same, the MEGADETH trademark, likenesses and logos have developed and now have a secondary and distinctive trademark meaning to

4

purchasers of goods including, but not limited to, t-shirts. The MEGADETH mark was registered with the United States Patent and Trademark Office on December 6, 1988 in connection with clothing, Registration No. 1,515,176 and has been renewed twice.

21. The Bootleg Merchandise sold by Defendants, which contains the MEGADETH likenesses, logos and/or trademark is of the same general nature and type as the merchandise sold and/or authorized to be sold by Plaintiff. Because the Bootleg Merchandise is so related to and indistinguishable from authorized merchandise that Plaintiff sells, it is likely to, and is certainly intended to, cause confusion to purchasers.

22. Defendants, by misappropriating and using the MEGADETH trademark, likenesses and logos, have misrepresented and falsely described to the general public the origin and source of the Bootleg Merchandise so as to create the likelihood of confusion by the ultimate purchaser as to both the source and sponsorship of the Bootleg Merchandise sold at MEGADETH concert dates.

23. In addition, Defendants' sale of the Bootleg Merchandise will infringe upon and dilute the MEGADETH trademark and logos.

24. The Bootleg Merchandise is in most instances of inferior quality and the sale thereof will be damaging to and will dilute the goodwill generated by Megadeth and the reputations that Plaintiff and Megadeth have developed in connection with the sale of legitimate and quality merchandise.

25. Defendants' unlawful merchandising activities have been and will be conducted without the permission or authority of Plaintiff and said actions constitute express and implied misrepresentations that the Bootleg Merchandise was created, authorized or approved by Plaintiff and/or Megadeth. Defendants have not obtained any license, authority or approval to manufacture, distribute or sell such Bootleg Merchandise.

26. Defendants' acts are in violation of 15 U.S.C. §1125(a) in that Defendants will use, in connection with goods and services, a false designation of origin and have caused and will continue to cause said goods (the Bootleg Merchandise) to enter into interstate commerce.

27. Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, will suffer irreparable harm and injury to Plaintiff's and Megadeth's images and reputations as a result thereof.

## AS AND FOR A SECOND CAUSE OF ACTION
## Violation of 15 U.S.C. §1125(a) (LAMB OF GOD INFRINGEMENT)

28. Plaintiff repeats and realleges paragraphs 1 through 17 and 19 through 27 of this Complaint as if fully set forth herein.

29. This count arises under Section 43(a) of the Lanham Act relating to trademarks, trade names and unfair competition entitled "False Designation of Origin and False Descriptions Forbidden," 15 U.S.C. §1125(a), and involves false descriptions in commerce.

30. The LAMB OF GOD trademark, likenesses and logos have been used widely throughout the United States. As a result of same, the LAMB OF GOD trademark, likenesses and logos have developed and now have a secondary and distinctive trademark meaning to purchasers of goods including, but not limited to, t-shirts. The LAMB OF GOD mark was registered with the United States Patent and Trademark Office on December 14, 2004, Registration No. 2,911,141 and has been renewed once.

31. The Bootleg Merchandise sold by Defendants, which contains the LAMB OF GOD likenesses, logos and/or trademark is of the same general nature and type as the merchandise sold and/or authorized to be sold by Plaintiff. Because the Bootleg Merchandise is so related to and indistinguishable from authorized merchandise that Plaintiff sells, it is likely to, and is certainly intended to, cause confusion to purchasers.

32. Defendants, by misappropriating and using the LAMB OF GOD trademark, likenesses and logos, have misrepresented and falsely described to the general public the origin and source of the Bootleg Merchandise so as to create the likelihood of confusion by the ultimate purchaser as to both the source and sponsorship of the Bootleg Merchandise sold at Lamb of God concert dates.

33. In addition, Defendants' sale of the Bootleg Merchandise will infringe upon and dilute the LAMB OF GOD trademark and logos.

34. The Bootleg Merchandise is in most instances of inferior quality and the sale thereof will be damaging to and will dilute the goodwill generated by Lamb of God and the reputations that Plaintiff and Lamb of God have developed in connection with the sale of legitimate and quality merchandise.

35. Defendants' unlawful merchandising activities have been and will be conducted without the permission or authority of Plaintiff and said actions constitute express and implied misrepresentations that the Bootleg Merchandise was created, authorized or approved by Plaintiff and/or Lamb of God. Defendants have not obtained any license, authority or approval to manufacture, distribute or sell such Bootleg Merchandise.

36. Defendants' acts are in violation of 15 U.S.C. §1125(a) in that Defendants will use, in connection with goods and services, a false designation of origin and have caused and will continue to cause said goods (the Bootleg Merchandise) to enter into interstate commerce.

37. Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, will suffer irreparable harm and injury to Plaintiff's and Lamb of God's images and reputations as a result thereof.

## **DAMAGES**

38. Plaintiff repeats and realleges paragraphs 1 through 17, 19 through 27 and 29 through 37 of this Complaint as if fully set forth herein.

39. It is impossible to ascertain the amount of compensation that will afford Plaintiff adequate relief for Defendants' actual, threatened and contemplated unlawful activities and Plaintiff will have no adequate remedy in the event that such unlawful activities are allowed to occur.

WHEREFORE, Plaintiff respectfully prays that this Court grant the following relief:

1. The Court issue a Temporary Restraining Order and a Preliminary Injunction restraining, enjoining and prohibiting Defendants from manufacturing, distributing or selling all merchandise bearing the MEGADETH and LAMB OF GOD names, trademarks, logos and/or likenesses and/or anything confusingly similar thereto.

2. The Court order the United States Marshal(s), state county and/or local law enforcement authorities to seize and impound any and all of the merchandise described in subdivision 1 above, which the Defendants attempt to sell or hold for sale outside of and within the confines of the concert halls at which Megadeth and Lamb of God are performing before, during or after those concert performances.

3. After a hearing on the merits, this Court issue a Permanent Injunction prohibiting Defendants from selling or attempting to sell merchandise described in subdivision 1 above and ordering seizure and destruction of all such merchandise wherever found.

4. Such other and further relief that this Court deems to be reasonable, necessary and just.

Dated: August 12, 2021                    Respectfully Submitted,

/s/Kenneth A. Feinswog
Kenneth A. Feinswog
Attorney for Plaintiff
California State Bar No. 129562
Southern District of Texas Bar No. 367441
400 Corporate Pointe, Suite 300
Culver City, California 90230
310-846-5800
kfeinswog@gmail.com

# EXHIBIT A

**DATE**               **VENUE**

8/22/2021              The Cynthia Wood Mitchell Pavilion
                       Woodlands, TX

8/24/2021              Don Haskins Center
                       El Paso, TX

8/25/2021              Isleta Amphitheater
                       Albuquerque, NM

8/27/2021              Ball Arena
                       Denver, CO

8/29/2021              Arizona Federal Theatre
                       Phoenix, AZ

8/31/2021              Reno Events Center
                       Reno, NV

9/1/2021               FivePoint Amphitheatre
                       Irvine, CA

9/2/2021               Concord Pavilion
                       Concord, CA

9/4/2021               Moda Center
                       Portland, OR

9/5/2021               White River Amphitheatre
                       Auburn, WA

9/9/2021               Hollywood Casino Amphitheatre - Chicago
                       Tinley Park, IL

9/11/2021              Blue Ridge Festival
                       Danville, PA

9/12/2021              Northwell Health at Jones Beach Theater
                       Wantagh, NY

| | |
|---|---|
| 9/13/2021 | Leader Bank Pavilion<br>Boston, MA |
| 9/15/2021 | BB&T Pavilion<br>Camden, NJ |
| 9/16/2021 | PNC Bank Arts Center<br>Holmdel, NJ |
| 9/18/2021 | Ruoff Music Center<br>Noblesville, IN |
| 9/19/2021 | DTE Energy Music Theatre<br>Clarkston, MI |
| 9/20/2021 | PNC Pavilion<br>Cincinnati, OH |
| 9/22/2021 | Walmart AMP<br>Rogers, AR |
| 9/24/2021 | Soaring Eagle Casino Amphitheatre<br>Mount Pleasant, MI |
| 9/25/2021 | National Balloon Classic Field<br>Indianola, IA |
| 9/26/2021 | Hollywood Casino Amphitheatre – St, Louis<br>St. Louis, MO |